01

02

03

04

05

06

07

08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  STANLEY TALLEY,                          )
                                            )
10          Plaintiff,                       )
                                            )   Case No. C04-01710-RSM
11          v.                               )
                                            )
12  JO ANNE B. BARNHART, Commissioner,       )
    Social Security Administration,          )   REPORT  AND  RECOMMENDATION
13                                           )
            Defendant.                       )
14  _____ )

15          Plaintiff Stanley W. Talley proceeds through counsel in his appeal of a final decision

16  of the Commissioner of the Social Security Administration (the "Commissioner").  Following

17  a lengthy series of hearings and appeals, an administrative law judge ("ALJ") denied plaintiff's

18  most recent application for Title II disability and disability insurance benefits.  For the reasons

19  described below the Court recommends that the ALJ's decision be affirmed and the

20  plaintiff's suit dismissed.

21                      **I.  FACTS AND PROCEDURAL HISTORY**

22          The plaintiff is fifty-nine-years old and has a high school education and at least three

23  years of college.  AR 16, 277, 542.  He was physically active and held a variety of jobs.  AR

24  58-68.  In 1977, Mr. Talley sustained an on-the-job back injury while working for the Coca-

25  Cola Company when a case of soft drinks fell on him.  AR 16, 58-68.  He subsequently

26  underwent back surgery but continued to complain of, *inter alia*, chronic back pain, a

REPORT AND RECOMMENDATION
PAGE -1

01  ganglion cyst in his left wrist, and problems related to his addiction to drugs and alcohol.  AR

02  16.  In sum, plaintiff has alleged that his pain and physical limitations rendered him disabled

03  after his March 14, 1977, injury and prior to September 30, 1982, his "date last insured."

04  Plaintiff's first application for Title II benefits occurred on December 17, 1979, but

05  that claim was rejected.  AR 538.  Plaintiff filed a second application for Title II benefits on

06  May 29, 1991.  *Id.*  This application was also denied and is the subject of the present appeal.

07  AR 551.  In the meantime, the plaintiff filed for Supplemental Security Income ("SSI")

08  benefits under Title XVI in 1985, and received a favorable decision.  AR 538.  He began

09  receiving Title XVI benefits in 1988, with a disability onset date of March 1, 1985.  *Id.*  Those

10  payments were later terminated because of plaintiff's "excess resources," an inheritance from

11  his late mother.[1]  *Id.*

12  As discussed above, this appeal arises in connection with plaintiff's *second* application

13  for Title II benefits filed on May 29, 1991.  AR 538.  In that application, plaintiff essentially

14  alleged impairment from conditions similar to those described above.  AR 538.  ALJs denied

15  his claims on November 8, 1994, and again on November 7, 1995.  AR 538.  The Social

16  Security Administration's Appeals Council ("AC") denied review on May 31, 1997, but the

17  United States District Court for the District of Oregon remanded the case to the AC on

18  December 12, 1997, which in turn remanded it for another hearing.[2]  AR 553, 661.  It appears

19

20      [1]Plaintiff received worker's compensation benefits from the State of Oregon during
21  this period as well.  AR 542.

22      [2]The district court's remand ordered the Commissioner to hold further proceedings
    that included:  (1) new longitudinal analysis of plaintiff's residual functional capacity for the
23  period in question, based on all of the evidence, including treating and examining sources.  It
    also ordered the ALJ to explain his findings for the record; (2) a supplemental hearing to
24  determine whether a Listing may have been met for the period in question and in which the
    testimony of medical and vocational experts would be heard (the latter's testimony to include
25  opinions based on a hypothetical as to plaintiff's condition prior to January 1, 1993).  The
    hearing would also permit other witnesses to give testimony; (3) plaintiff's, and all other
26  testimony, was to be considered in light of SSRs 96-4p, 96-7p, and 20 C.F.R. § 404.1529; and

REPORT AND RECOMMENDATION
PAGE -2

01   that plaintiff at this time offered "new" evidence consisting of medical records from one Dr.

02   Purdy.  AR 541; 686-709.  Nevertheless, following plaintiff's third hearing, the ALJ issued a

03   decision on January 13, 1999, that found plaintiff was not under a disability for the period in

04   question and was therefore not eligible for benefits.  AR 661-62.

05         Plaintiff again appealed to the AC asserting several errors and once again offered "new"

06   evidence as to plaintiff's condition during the period in question.  AR 710.  This new evidence

07   consisted of a letter from a vocational expert ("VE") that assessed the work capacity of a

08   different claimant with allegedly similar conditions.  AR 672, 710.  On December 4, 2001, the

09   AC assumed jurisdiction and again remanded the case to an ALJ.[3]  AR 669-71.

10                    **II.  THE 2002 ALJ DECISION**

11         In his 2002 decision, the ALJ found that the claimant had not been under disability "at

12   any time, during the relevant period" and that he was therefore not entitled to a period of

13   disability or disability insurance benefits.  AR 551.  He noted that he believed the district court

14   erroneously allowed the submission of the "new evidence," that the court had not reviewed

15   that evidence, and that such information could not be considered on appeal without a showing

16   of good cause, which he believed had not been made.  AR 540-41.  The ALJ then applied the

17

18   (4) the AC and ALJ were ordered to take action to complete the administrative record.  AR

19   554-55.

20         [3]AC's remand ordered the ALJ to:  (1) evaluate the plaintiff's subjective complaints and

21   provide rationale for his evaluations; (2) evaluate the plaintiff's mental impairment and to
provide rationale for his evaluation; (3) give further consideration to petitioner's maximum

22   residual capacity during the period in question and to provide "specific references to evidence
of record" in support.  In making this evaluation, the ALJ was to consider treating, examining,

23   and nonexamining sources, and explain his rationale for weighing that evidence.  The ALJ was
also permitted to call examining and treating sources to provide additional evidence or

24   clarification of what actions plaintiff could perform, despite his impairments through September
31, 1982; (4)  obtain further evidence from a medical expert to clarify the nature and severity

25   of plaintiff's condition, if necessary; and (5) if necessary, obtain evidence from a vocational
expert to clarify the effect of the assessed limitations on the plaintiff's occupational base.  AR

26   669-70.

REPORT AND RECOMMENDATION
PAGE -3

01   five-step sequential evaluation process and at step five determined that, despite plaintiff's

02   impairments, he was able to perform certain types of light and sedentary work.  AR 541-50.

03         Plaintiff timely filed for appeal to the AC, again submitting new evidence relating to his

04   condition during the period in question.[4]  AR 524, 529.  The AC refused to assume jurisdiction

05   over plaintiff's 2004 appeal.  AR 523.  The 2002 ALJ decision following the court remand is

06   therefore the Commissioner's final decision for the purposes of this Court's judicial review.

07   *See* 20 C.F.R. § 404.984.  Plaintiff appealed the Commissioner's final decision to this Court,

08   seeking a reversal of his decision and a remand to determine benefits.

### III.  THE PERIOD AT ISSUE

10         The plaintiff's Title II disability insurance lapsed on September 30, 1982.  AR 538.  A

11   claimant must establish disability prior to the date last insured in order to qualify for Title II

12   disability benefits.  *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  In this case,

13   plaintiff filed his application for benefits in 1991, nine years *after* his date last insured of

14   September 30, 1982.  AR 538.  To obtain benefits, plaintiff must establish that he became

15   disabled within the meaning of the Social Security Act during the relevant period of

16   March 14, 1977 (the date of his on-the-job injury), and September 30, 1982 (the date of his

17   last quarter of coverage).  AR 538.

### IV.  JURISDICTION

19         The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C.

20   §§ 405(g) and 1383(c)(3) (2005).

### V.  STANDARD OF REVIEW

22         The court may set aside the Commissioner's denial of social security benefits when the

23   ALJ's findings are based on legal error or not supported by substantial evidence in the record

24   as a whole.  *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993);

25

26       [4]This new evidence appears to be limited to an Orthopedic Consultation Supplemental
Report dated October 22, 1981.  AR 529.

REPORT AND RECOMMENDATION
PAGE -4

01  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Substantial evidence is defined as more

02  than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

03  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747,

04  750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

05  medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

06  Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation, it is the

07  Commissioner's conclusion that must be upheld.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

08  Cir. 2002).

09         If the court determines that the ALJ has erred, then the court has discretion to remand

10  for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th

11  Cir. 1990).  The court may direct an award of benefits where "the record has been fully

12  developed and further administrative proceedings would serve no useful purpose."  *McCartey*

13  *v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

14          Such a circumstance arises when:  (1) the ALJ has failed to provide legally
        sufficient reasons for rejecting the claimant's evidence; (2) there are no

15          outstanding issues that must be resolved before a determination of disability
        can be made; and (3) it is clear from the record that the ALJ would be required

16          to find the claimant disabled if he considered the claimant's evidence.

17  *Id*. at 1076-77.

## VI.  EVALUATING DISABILITY

19         As the claimant, Mr. Talley bears the burden of proving that he is disabled.  *Meanel v.*

20  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the "inability to engage in

21  any substantial gainful activity by reason of any medically determinable physical or mental

22  impairment, which can be expected to result in death, or which has lasted or can be expected to

23  last for a continuous period of not less than twelve months[.]"  42 U.S.C. §§ 423(d)(1)(A),

24  1382c(a)(3)(A).  A claimant is disabled only if his impairments are of such severity that he is

25  not only unable to do his previous work, but cannot, considering his age, education, and work

26  experience, engage in any other substantial gainful activity existing in the national economy.

01 | *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094,

02 | 1098-99 (9th Cir. 1999).

03 |       The Social Security regulations set out a five-step sequential evaluation process for

04 | determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

05 | 20 C.F.R. §§ 404.1520, 416.920.  At step 1, the claimant must establish that he or she is not

06 | engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

07 | claimant establishes that he or she has not engaged in any substantial gainful activity, the

08 | Commissioner proceeds to step 2.  At step 2, the claimant must establish that he or she has one

09 | or more medically severe impairments or combination of impairments that limit his or her

10 | physical or mental ability to do basic work activities.  If the claimant does not have such

11 | impairments, he or she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant

12 | does have a severe impairment, the Commissioner moves to step 3 to determine whether the

13 | impairment meets or equals any of the listed impairments described in the regulations.  20

14 | C.F.R. §§ 404.1520(d), 416.920(d).  A claimant who meets or equals one of the listings for the

15 | required twelve-month duration requirement is disabled.  *Id.*

16 |       When the claimant's impairment neither meets nor equals one of the impairments listed

17 | in the regulations, the Commissioner must proceed to step 4 and evaluate the claimant's

18 | residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

19 | Commissioner evaluates the physical and mental demands of the claimant's past relevant work

20 | to determine whether the claimant can still perform that work.  *Id.*  If the claimant is not able to

21 | perform his or her past relevant work, the burden shifts to the Commissioner at step 5 to show

22 | that the claimant can perform some other work that exists in significant numbers in the national

23 | economy, taking into consideration the claimant's RFC, age, education, and work experience.

24 | 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1100.  If the Commissioner finds

25 | the claimant is unable to perform other work, then the claimant is found disabled and benefits

26 | may be awarded.

REPORT AND RECOMMENDATION
PAGE -6

01

## VII.  DECISION BELOW

02      In his decision dated August 19, 2002, the ALJ concluded that Mr. Talley could not

03 return to his former employment as of the date of the expiration of coverage.  However, he

04 also found that Mr. Talley was able to engage in "simple, routine, unskilled-entry level" light

05 exertion work during the period at issue, and therefore, was not disabled.  AR 540.  His

06 specific findings included:

07          3.     The claimant has an impairment of Degenerative Disc Disease; an
                  impairment which is considered to be "severe" based on the
08                requirements in the Regulations 20 C.F.R. § 404.1520.

09                 . . .

10          4.     [T]he claimant's medically determinable impairment does not meet or
                  medically equal any of the listed impairments in Appendix 1, Subpart
11                P, Regulation No. 4, including listing 1.05C.

12          5.     [T]he claimant's allegations regarding his limitations are not entirely
                  credible . . . .
13
                   . . .
14
            7.     The claimant has the residual functional capacity for light
15                exertion with postural and vocational non-exertional limitations,
                  as set forth in the body of the decision (20 C.F.R. § 404.1567).
16
                   . . .
17
            11.    The claimant has a combination of exertional and non-exertional
18                functional limitations, wherein no one rule in Appendix 2 would direct
                  a conclusion of disabled or not disabled . . . .  [T]he claimant is
19                disabled under a framework application of the medical-vocational
                  guidelines, Appendix 2, Subpart P of the regulations, Table 2,
20                guidelines 202.00(b) and 202.21.

21          12.    [T]he claimant has not been under a "disability," as defined in the
                  Social Security Act, at any time, during the relevant period of
22                March 14, 1977, through September 30, 1982 (20 C.F.R.
                  § 404.1520(f)).
23

24 AR 550-51.

25

26

REPORT AND RECOMMENDATION
PAGE -7

## VIII.  ISSUES ON APPEAL

Although the plaintiff's briefing proceeds in many directions, it appears that the issues raised fall into three areas:

A.  Did the ALJ commit reversible error relating to the procedural aspects of the hearing?

B.  Did the ALJ err in his disability analysis at steps three and four?

C.  Did the ALJ err in his disability analysis at step five?

## IX.  DISCUSSION

A.  The ALJ Did Not Commit Reversible Error Relating to Procedural Aspects of the Hearing.

1.  The ALJ's Treatment of the "New" Evidence Did Not Constitute Reversible Error.

Plaintiff argues that the ALJ committed legal error by "disregarding orders issued by the [AC]." Pl. Op. Br. 10; Pl. Rply. Br 1-2.  He alleges that the ALJ improperly rejected new evidence submitted by him that was accepted by both the AC and district court and which they ordered the ALJ to address. Pl. Op. Br. 10; Pl. Rply. Br. 1-2.  The Commissioner responds that the ALJ properly rejected the evidence and gave sufficient reasons for doing so.  Def. Br. 6.  She further responds that this Court has no jurisdiction to review a decision by the AC because such orders are not a "final decision" by the Commissioner.  Def. Br. 7.

ALJs have a duty to "take any action that is ordered by the [AC] and may take any additional action that is not inconsistent with AC's remand." 20 C.F.R. § 404.977(b).  In connection with its specific orders on remand, the AC ordered the ALJ to, *inter alia*, "*address the evidence which was submitted with the request for review.*" AR 671 (emphasis added).

In this case, plaintiff's argument appears to surround the ALJ's treatment of a letter from a vocational expert ("VE") and of certain medical records.  The VE letter concerns a different claimant named "Christine" that was purportedly submitted to show the VE's opinion

REPORT AND RECOMMENDATION
PAGE -8

01 of someone with impairments allegedly similar to plaintiff's.  AR 672, 710.  The ALJ reviewed

02 that letter and determined it to be immaterial and irrelevant because it dealt with an entirely

03 different claimant.  AR 541.

04    The AC's order did not require the ALJ to "accept" or "include" the new evidence, but

05 rather to "address" it.  AR 671.  Plaintiff's interpretation appears to be that the ALJ was

06 required to admit the new evidence into the record.  Pl. Op. Br. 10.  Nothing in the record or

07 the term "address" requires such action.  The ALJ determined that without more foundation or

08 showing of relevance, the information involving another person would not be pertinent to the

09 issues involving the plaintiff.  This action complies with the AC's order, and does not require

10 reversal.

11    Plaintiff also argues that the ALJ erroneously excluded medical evidence from Dr.

12 Purdy, a treating physician, concerning the time period in question, including a letter that

13 plaintiff states characterizes him as "disabled."  Pl. Op. Br. 10; Pl. Rply. Br. 1-2.  While the

14 ALJ's decision notes his belief that the district court erroneously permitted the submission of

15 these records, the ALJ nevertheless evaluated Dr. Purdy's medical reports in his decision.  AR

16 542-43, 546.  In addition, these documents are included in the record.  AR 693.  Plaintiff's

17 argument that the ALJ ignored or excluded this evidence is without merit.

18       2.  The ALJ Did Not Err by Failing to Summon a Medical Expert to
         Assess Plaintiff's Disability Onset Date and Medical
19          Equivalency.

20    Plaintiff relies heavily on a social security ruling ("SSR") to argue that the ALJ was

21 required to hear testimony from a medical expert ("ME") to establish his disability onset date

22 and whether his condition was medically equivalent to a listing.  Pl. Op. Br. 11.  The

23 Commissioner, however, replies that the decision to consult a medical expert rests entirely with

24 the ALJ and that there was no requirement to call such an expert.  Def. Br. 10.

25    As a general proposition, an ALJ must determine the onset date of a claimant's alleged

26 disability in order to determine the period for which benefits may be awarded.  The onset date

REPORT AND RECOMMENDATION
PAGE -9

01  is the first day on which an individual is found to be disabled, as defined in the Social Security

02  Act and accompanying regulations.  *Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991);

03  SSR 83-20, 1983 WL 31249, at *1 (S.S.A.).

04      Here, plaintiff claims his onset date to be March 14, 1977, the date of his accident.  AR

05  542.  While it is clear that plaintiff was injured at this time, the ALJ determined that he was not

06  disabled as a result of the accident or from the date of the accident through at least the end of

07  his insured period in September 1982.  Virtually all of the medical evidence in the record is

08  dated after both the date of the injury and his date last insured.  These documents describe

09  plaintiff as suffering from, *inter alia*, degenerative disc disease and a cyst on his left wrist, and,

10  as the ALJ noted, an increasing number of other impairments that "continued to grow" over

11  time.  AR 542, 544.  The ALJ found, however, that the evidence in the record did not

12  demonstrate that plaintiff was disabled during the period in question.  AR 540.  If that

13  determination is supported by substantial evidence, then an "onset date" within the insured

14  period does not exist.  In such a case, there would be no requirement to call an expert to

15  determine an onset date.  As discussed below, the ALJ's determination that plaintiff was not

16  disabled is supported by substantial evidence.

17      Similarly, plaintiff relies on SSR 86-8 and the Social Security Administration's

18  *Hearings, Appeals and Litigation Law Manual* ("HALLEX") to argue that a remand is

19  warranted because of the ALJ's failure to call a medical expert to determine whether

20  plaintiff's condition was equivalent to a Listing under step 3 of the disability analysis.  Pl. Op.

21  Br. 11.  SSRs do not carry the force of law, but are binding on all of the Social Security

22  Administration, including ALJs.  20 C.F.R. § 402.35(b); *Chapman v. Apfel*, 236 F.3d 480,

23  484 n.9 (9th Cir. 2000); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

24  HALLEX, however, contains procedural guidance and policies that have been adopted by the

25  Appeals Council for use by ALJs and staff members.  *Moore v. Apfel*, 216 F.3d 864, 868 (9th

26  Cir. 2000). While the agency intends that these procedures be followed, they are not

REPORT AND RECOMMENDATION
PAGE -10

01 substantive rules and do not carry the force of law.  *Id.*  An ALJ's failure to comply with

02 HALLEX therefore does not require remand.  To the extent plaintiffs arguments assert the

03 contrary, they are not persuasive.

04       SSR 86-8 states that:

05 > Any decision as to whether an individual's impairment or impairments are
> medically the equivalent of a listed impairment must be based on medical
06 > evidence demonstrated by the medically acceptable clinical and laboratory
> diagnostic techniques, including consideration of a medical judgment about
07 > medical equivalence furnished by one or more physicians designated by the
> Secretary.

08 1986 WL 68636, at *4 (S.S.A.) (superceded by SSR 91-7c to the extent it relates to children).

09 State agency physicians rendered an unfavorable opinion of plaintiff's alleged disability.  Pl.

10 Op. Br. 12; AR 758-59.  Apparently, plaintiff contends that SSR 86-8 required another such

11 opinion after he submitted Dr. Purdy's reports. Pl. Op. Br. 12.  While SSR 86-8 requires that

12 a state-approved medical expert render an opinion on equivalence, it does not require another

13 opinion when the claimant submits new evidence.  A related SSR, however, specifies two

14 *discretionary* circumstances when an ALJ should obtain an updated opinion on equivalence

15 from a medical expert:  (1) when no additional medical evidence is submitted but, *in the*

16 *opinion* of the ALJ (or the AC), the evidence in the record suggests that a finding of

17 equivalence may be reasonable; or (2) when additional medical evidence is received that *in the*

18 *opinion* of the ALJ (or the AC) may change the state consultant's finding concerning

19 equivalence. SSR 96-6p, 1996 WL 374180, at *3-4 (S.S.A.).  Thus, it is the ALJ, not the state

20 consultant, who "is responsible for deciding the ultimate legal question of whether a listing is

21 met or equaled." *Id.* at *3.  Here, the ALJ had no obligation to call in another expert to review

22 the medical evidence.  Indeed, the ALJ explicitly found that the "new" evidence here was not

23 new at all and that it all addressed plaintiff's condition after his coverage lapsed.  As a result,

24 there was no requirement to summon a new medical expert.

25

26

REPORT AND RECOMMENDATION
PAGE -11

3.     The ALJ's Alleged Failure to Include Motions and One
       Transcript in the Record Does Not Warrant Remand.

Plaintiff filed a series of motions with the ALJ.  These motions and a transcript of a hearing which took place on October 15, 1998, which the ALJ made reference to in his 2002 decision at issue, were not included in the record on this appeal.  By order dated June 15, 2005, this Court ordered the Commissioner to supplement the record.  Dkt. No. 20.  The record was supplemented.  Dkt. Nos. 23, 25.  The supplementation of the record moots plaintiff's arguments that the absence of these records precludes effective judicial review.

Plaintiff submitted four motions to the ALJ, all of which were denied.  AR 744.[5]  These motions related to:  (1) appointment of a medical expert to address medical equivalency, AR 757; (2) objections to capacity evaluations by Disability Determination Services physicians, AR 758;  (3) a "similar fault" finding, AR 760; and (4) *Daubert* objections to VE testimony relating to use of Social Security Administration VEs and the lack of sources to indicate the number of jobs for any Dictionary of Occupational Titles code, AR 763.  Pl. Op. Br. p. 7, n.4; Dkt. No. 23.  With the exception of the first motion, the plaintiff has failed to discuss how any of these motions or, more importantly, the denial of these motions, are material to any of the issues on review.[6]  As a result, denial of the motions by the ALJ cannot compel an order of remand.  With respect to the first motion, as discussed above in Section IX(A)(2), the ALJ did not err in failing to call a medical expert.

Plaintiff also argues that the ALJ relied on medical expert testimony from a 1998 hearing to assist in establishing plaintiff's RFC, evaluating his credibility, and determining

_____

[5]In his brief, the plaintiff states that five motions were filed.  The fifth "motion" is not actually a motion at all.  Instead this "motion" consists of orders and opinions from other tribunals, submitted as evidence.  AR 765.

[6]To the extent that plaintiff's *Daubert* objection to use of SSA vocational experts can be said to be fairly directed to determining the jobs existing during the period of disability as opposed to a particular bias, this issue is further discussed, *infra*, in Section IX(C) of this Report and Recommendation.

REPORT AND RECOMMENDATION
PAGE -12

01  whether he met a Listing. Pl. Op. Br. 14-15. The ALJ made reference to the 1998 ME

02  testimony of Dr. Borman in his opinion. AR 544-45. This 1998 testimony was not initially

03  made part of the record before this Court. Mr. Talley objected to the ALJ's 2002 decision,

04  because the failure to include the 1998 testimony in the record precluded effective judicial

05  review. In response to the Court's June 15, 2005, order, Dkt. No. 20, this transcript has been

06  provided, and is now in the record. Dkt. No. 25. Upon review, the Court finds that Dr.

07  Borman's testimony, AR 774-83, constitutes substantial evidence that support the ALJ's

08  conclusions that Mr. Talley's impairments do not meet or equal a Listing, as well as the ALJ's

09  RFC evaluation.

10          B.      The ALJ Did Not Err in His Step Three or Step Four Disability
                    Analysis.
11

12          At step 3 of the disability evaluation process, the ALJ determined that the plaintiff's

13  impairments did not equal or exceed a listing during the period in question. The ALJ then

14  concluded, at step four that the plaintiff had an RFC for light exertion with postural and

15  vocational non-exertional limitations. The plaintiff cites a number of alleged errors regarding

16  the ALJ's findings in this regard.

17                  1.      The ALJ Did Not Err by Failing to Properly Analyze Plaintiff's
                            Testimony.
18

19          Plaintiff argues that the ALJ erred by failing to properly evaluate his testimony in

20  making his RFC determination. Pl. Op. Br. 15-16. More specifically, he argues that the ALJ

21  failed to evaluate that testimony in a manner consistent with the credibility factors set forth in

22  SSR 96-7p and that provided clear and convincing justification for rejecting it. Pl. Op. Br. 15-

23  16. He argues that the Commissioner relied exclusively on medical records that supported his

24  decision. Pl. Rply. Br. 4. The Commissioner responds that the ALJ's evaluation was properly

25  supported by substantial evidence and that it should therefore be upheld. Def. Br. 7-10.

26          According to the Commissioner's regulations, a determination of whether to accept a

REPORT AND RECOMMENDATION
PAGE -13

01   claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529,

02   416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p, 1996 WL 374186 (S.S.A.).  First, the ALJ

03   must determine whether there is a medically determinable impairment that could reasonably

04   be expected to cause the claimant's symptoms.  *Id.* at 9(a) and (b); *Smolen*, 80 F.3d at 1281-2;

05   SSR 96-7p, at *2. Once a claimant produces medical evidence of an underlying impairment, the

06   ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because

07   they are unsupported by objective medical evidence.  *Smolen*, 80 F.3d at 1282; *Reddick v.*

08   *Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted).  Absent affirmative

09   evidence showing that the claimant is malingering, the ALJ must provide "clear and

10   convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*,

11   157 F.3d at 722.

12         When evaluating a claimant's credibility, the ALJ must specifically identify what

13   testimony is not credible and what evidence undermines the claimant's complaints; general

14   findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

15   consider "ordinary techniques of credibility evaluation" including the claimant's reputation for

16   truthfulness, inconsistencies in her testimony or between her testimony and conduct, daily

17   activities, work record, and testimony from physicians and third parties concerning the nature,

18   severity, and effect of the symptoms of which she complains.  *Smolen*, 80 F.3d at 1284; *see*

19   *also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations

20   omitted).

21         Here, the ALJ found that there was medical evidence of an underlying impairment.

22   AR 544.  Because there was no evidence (nor any assertion) that plaintiff was malingering,

23   the ALJ was required to provide specific clear and convincing reasons for disbelieving

24   plaintiff's testimony in connection with the severity of his symptoms.  He found that the

25   plaintiff's testimony was not "entirely credible . . . consistent with . . . or supported by the

26   overall evidence of record." AR 545.  The ALJ's analysis of the record on this point is

01  thorough.  He reviewed numerous doctors' reports and related documents that indicate

02  plaintiff suffered from degenerative disc disease that caused persistent pain in his lower back

03  and legs, had a drug problem, wrist injuries, and used a cane.  AR 546-47.  He also reviewed

04  other reports that indicate the plaintiff was not "disabled."  *Id.*  Several of these sources

05  indicate that plaintiff was ambulatory, able to stand and, despite persisting pain, was in many

06  ways improving.  *Id.*  Based on these sources, the ALJ found plaintiff incapable of his prior

07  work (which involved medium to heavy work), but able to perform other types of light work.

08  AR 547-48.

09          The ALJ also identified specific testimony by plaintiff and the evidence to support his

10  adverse credibility determination.  He noted, for example, that the plaintiff testified he had

11  always had problems with balance, despite contrary testimony that he played college level

12  basketball and tried out for the Seattle Supersonics.  AR 542.  He also pointed to evidence

13  indicating that his doctors were trying to wean plaintiff from his cane because of his

14  improving condition, despite plaintiff's complaints.  AR 543.  He also reviewed the

15  transcripts of prior hearings that revealed that plaintiff did not have mental deficiencies in

16  concentration, persistence, or pace, despite allegations to the contrary.  *Id.*  These, and other

17  specific findings, support the ALJ's adverse credibility determination and satisfy the clear and

18  convincing reasons standard required by *Reddick*.

19                  2.      The ALJ Properly Evaluated Plaintiff's RFC.

20          Plaintiff argues that the ALJ erred in calculating his RFC by failing to use the

21  analytical steps provided in SSR 96-8p.  Pl. Op. Br. 17.  He argues that the ALJ did not

22  consider "all" of his impairments, including those that were not severe, failed to determine

23  whether he was capable of working on a regular and continuing basis, and did not properly

24  develop the record.  Pl. Op. Br. 17.  Defendant responds, however, that the ALJ's analysis

25  included all necessary variables and was therefore full and complete.  Def. Br. 13-14.

26

REPORT AND RECOMMENDATION
PAGE -15

01        RFC is a medical determination of the plaintiff's remaining ability to perform physical

02  and mental activities in light of the limitations imposed by his or her impairments.  20 C.F.R.

03  §§ 404.1520(a)(1), 416.920(a)(1).  The Commissioner's five-step process requires her to

04  consider all of a claimant's impairments and to assess their RFC to determine whether he can

05  still perform his past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If he cannot

06  perform past relevant work, the Commissioner must then determine whether the claimant can

07  engage in other types of substantial gainful work that exists in the national economy.  *Id.*  To

08  make this determination, an ALJ must assess the claimant's abilities to work on a "regular and

09  continuing basis," equivalent to a typical eight-hour per day, five-day per week work week.

10  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).  The RFC determination must be based on all

11  of the relevant evidence in the case, even evidence regarding symptoms that are not "severe."

12  *Id*. at *5.  It must also include a narrative discussion describing how the evidence supports the

13  ALJ's conclusion, citing specific evidence.  *Id.* at *7.  In cases in which symptoms such as

14  pain are alleged, the RFC assessment must thoroughly discuss and analyze the evidence and

15  resolve inconsistencies.  *Id.*  Only after this analysis may an RFC be referred to in connection

16  with the exertional categories of "light," "heavy," and so forth.  *Id.* at *3.

17        In this case, the ALJ's RFC determination was consistent with the regulations'

18  requirements.  As noted above, the ALJ's decision is specific and well documented.  With

19  respect to the RFC analysis in particular, the ALJ thoroughly assessed plaintiff's many

20  complaints, including plaintiff's persistent lower back pain, pain in his thigh, cervical

21  stiffness, and "diffusely decreased range of motion."  AR 546.  The ALJ analyzed this

22  evidence in light of other evidence that suggested plaintiff was improving and that he was

23  both mobile and "able to do more than 'basic work activities.' "  AR 547.  For instance, he

24  noted Dr. Purdy's observations that plaintiff's gait was slow, but that there were no definite

25  signs of sciatica or nerve root irritation.  AR 546.  He also noted Dr. Purdy's observation that

26  plaintiff had an increasing range of motion and better endurance.  *Id*.  The ALJ also analyzed

01   the opinions of Dr. Gritzka, who noted plaintiff had improved in terms of pain, posture, and

02   mobility and that suggested plaintiff's use of cocaine and other drugs may have slowed his

03   recovery. AR 547. In sum, the ALJ's RFC analysis was thorough and supported by

04   substantial evidence and should therefore be upheld.

05              3.     The ALJ's Failure to Specifically Address One
                           Witness's Statement in His Decision is Harmless

06                            Error.

07       Finally, plaintiff argues that the ALJ erred by failing to consider a witness's statement

08   regarding plaintiff's abilities without providing specific and legitimate reasons for doing so.

09   Pl. Op. Br. 20; AR 682-85. He argues that the ALJ is obliged to consider observations by

10   non-medical sources as to how an impairment affects a claimant's ability to work. *Id.*

11       In order to determine whether a claimant has an impairment, an ALJ may also consider

12   lay witness sources, such as testimony from family members. 20 C.F.R. §§ 404.1513(d)(4),

13   416.913(d)(4). Lay witness testimony as to a claimant's symptoms or how an impairment

14   affects ability to work is competent evidence. *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th

15   Cir. 1987). It therefore cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d

16   915, 919 (9th Cir. 1993). If an ALJ wishes to discount the testimony of a lay witness, he must

17   provide reasons germane to each witness. *Id.* Identifying inconsistencies between such

18   statements and the record is sufficient. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

19       In this case, the lay witness testimony concerns a written statement from someone who

20   knew the plaintiff. AR at 682-85. It appears that this was new evidence submitted for the

21   2002 hearing and, as such, does not appear to have been specifically addressed by the ALJ.

22   While it is not surprising that the ALJ specifically failed to address every piece of evidence in

23   this 750 page record, he should have addressed this evidence. Nevertheless, his failure to

24   specifically evaluate the statement is harmless error and does not require remand. *Batson v.*

25   *Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding harmless error

26   where decision as a whole was supported by substantial evidence). To the contrary, in light

REPORT AND RECOMMENDATION
PAGE -17

01 of the foregoing discussion, the ALJ's decision was supported by substantial evidence overall

02 and should therefore be upheld.

03      C.      The ALJ Did Not Err in His Step Five Analysis By Giving An Incomplete
                Hypothetical.

04

05      Plaintiff argues that the ALJ erred in making his RFC analysis by providing the

06 vocational expert with a hypothetical that did not accurately characterize plaintiff's abilities.

07 Pl. Op. Br. 19.  Plaintiff argues that the ALJ improperly included in the hypothetical that

08 plaintiff was capable of light work and that the VE's testimony fails to establish the

09 availability of jobs in significant numbers that plaintiff could perform.  Pl. Op. Br. 19-20; Pl.

10 Rply. Br. 6.  Defendant responds, however, that the ALJ's analysis included all necessary

11 variables and was therefore full and complete.  Def. Br. 13-14.

12      In the absence of other reliable evidence that demonstrates plaintiff's ability to

13 perform specific jobs, an ALJ must call a VE to answer hypothetical questions concerning the

14 claimant.  *Magallanes*, 881 F.2d at 756 (internal citations omitted).  The hypothetical,

15 however, must contain all of the plaintiff's particular limitations, be based on the medical

16 evidence, and must be supported by the record.  *Id.* (internal citations omitted).  An ALJ is

17 not required to accept the limitations presented in a hypothetical and may reject them if

18 supported by substantial evidence.  *Id* at 756-57.

19      Here, the ALJ presented a hypothetical question to the VE about whether a person

20 with the impairments he found plaintiff to possess could perform past relevant work.  AR

21 752.  The hypothetical described someone able to perform at least light work, with the option

22 to sit, stand, and walk no longer than thirty minutes in any position, who could not do much

23 moving, and who had decreased concentration ability.  *Id.*  The VE responded that such a

24 person could not perform past relevant work, but then explained that he could perform other

25 types of work such as "a variety of assembly and hand packaging types of positions including

26 small products assembler, which would be a light unskilled occupation" as well as "assembly

REPORT AND RECOMMENDATION
PAGE -18

01  workers in the sporting goods industry." AR 752-53.  He also opined that these positions

02  were available locally and nationwide. AR 752-54.  This hypothetical was consistent with the

03  ALJ's RFC determination.

04          In his decision, the ALJ found:

05          Specifically, Mr. Stipe identified the job of "Assembly of small products or in
            sporting goods" with 700-to-6,000 jobs in Oregon and 75,000-to-750,000 jobs
06          in the national economy; "Hand Packager," with 2,200 jobs in Oregon and
            250,000 jobs in the national economy; "Electronics work packager or
07          inspector," with 1,200 jobs in Oregon and 200,000 jobs in the national
            economy.  I concur with the impartial vocational experts (sic) opinion and
08          conclude that the claimant has the residual functional capacity to make a
            successful vocational adjustment to "other work," requiring no more than
09          unskilled entry level work knowledge, at a light exertion level, existing in
            significant numbers in the national economy.

10

11  AR 549.

12          The plaintiff's attorney added limitations to the hypothetical and argues that because

13  the VE indicated that there would be no jobs for someone who was in pain at the "eight, nine

14  or ten level at least one-third of the time, during which period of time they'll be working at

15  about 30 percent of a normal pace . . . [with] deficiencies of concentration, persistence or

16  pace resulting in failure to complete tasks in a timely manner," the ALJ erred in concluding

17  there would have been jobs available for the claimant. AR 754.   The ALJ was not required

18  to accept the limitations inherent in the hypothetical posed by the plaintiff's question because

19  they were not supported by substantial evidence existing in the record. *Osenbrock v. Apfel,*

20  240 F.3d 1157, 1164-65 (9th Cir. 2001).

21          Finally, the claimant argues that because the VE indicated that statistics about the job

22  availability back to 1977 were not available or as up to date as statistics today, that the VE's

23  testimony lacked foundation to support the conclusion that jobs existed. Pl. Op. Br. 20.  The

24  VE did, in fact, state that the published data going back to the 1977 time frame was not of the

25  same quality or specificity as data that is now prepared and routinely used. AR 753.  This

26  highlights just one of the difficulties present in this case associated with trying to go back

01  more than twenty years to make a determination that someone was disabled by their date last

02  insured, which was September 30, 1982.  Nevertheless, the ALJ's decision mentioned not

03  only the known jobs at that time — small product assemblers and hand packers — but also

04  included general reference to the lowest skilled jobs available.  AR 549.  There is no reason to

05  believe that low skilled jobs — small product assemblers and hand packers and other light-

06  unskilled jobs — are a recent phenomena.[7]  The ALJ has substantial authority relating to the

07  evidence received and the evaluation of that evidence.  42 U.S.C. § 405(b)(1) (broadly

08  defining evidence for purposes of disability); *Andrews*, 53 F.3d at 1039 (indicating ALJ has

09  broad authority to resolve ambiguities in record).  While it would have been better for the VE

10  to have presented historical evidence relating to specific jobs available in 1977, the lack of

11  such specific data does not preclude the ALJ from making his best assessment based on the

12  available data.

13                                              **X.  CONCLUSION**

14          While sympathetic to the impairments suffered by Mr. Talley, the role of this Court is

15  limited to reviewing the decision of the ALJ to determine if those findings are supported by

16  substantial evidence.  Where the evidence is susceptible to more than one rational

17  interpretation, the Commissioner's conclusion must be upheld.  *Thomas*, 278 F.3d at 954.  In

18  this case, the Commissioner's decision is supported by substantial evidence.

19          Accordingly, I recommend that the final decision of the Commissioner be affirmed.  A

20  proposed Order accompanies this Report and Recommendation.

21          DATED this 31st day of August, 2005.

22                                                          *James P. Donohue*

23                                                          JAMES P. DONOHUE
                                                            United States Magistrate Judge

24

25          [7] Because the advent of the personal computer came after the last date of insurability in

26  this case (September 30, 1982), the same cannot be necessarily said about an electronics work
    packager.

REPORT AND RECOMMENDATION
PAGE -20